Sell/sal -ospp                                         0544

Ginsc - 698 - 0057 -salv contract

## RESIDENTIAL CONTRACT OF PURCHASE

THIS CONTRACT OF PURCHASE (hereinafter "Contract") is made as of March 29, 2013, between Estate of Dennis Obey, (the "Seller"), and 4 Johns Investments, LLC, (the "Purchaser").

1. **Real Property.** Purchaser agrees to buy and Seller agrees to sell the land and all improvements thereon and appurtenances thereto which fronts upon a public street or has a recorded access easement to a public street (the "Property"), located in the City of Richmond, Virginia, and described as: 3904 Alma Avenue, Richmond, VA 23222

2. **Personal Property:** The following personal property, which is free of all liens and encumbrances, is included in this sale: refrigerator, washer, dryer, freezer on side porch, all sheds.

3. **Purchase Price:** The purchase price (the "Purchase Price") of the Property is Twenty Five Thousand ($25,000.00), which shall be paid to the Settlement Agent (designated in paragraph 7 below) at settlement ("Settlement") by certified or cashier's check, or wired funds, subject to the prorations described herein and/or from the following sources.

$500.00      (a) **Deposit:** See Paragraph 4.

$            (b) **Balance of the Purchase Price:** To be paid by Purchaser with cash, certified or cashier's check, or wired funds to the Settlement Agent, at Settlement.

$ 25,000.00  (c) **Total Purchase Price**

4. **Deposit:** Purchaser has made a deposit with the purchaser, the agreed upon escrow agent Title Alliance (the "Escrow Agent"), of Five Hundred Dollars ($ 500.00) (the "Deposit") by check, receipt of which is hereby acknowledged. The Deposit shall be held in escrow by the Escrow Agent, pursuant to the terms of this Contract, until Settlement and then applied to the Purchase Price.

5. **Financing.** If this Contract is contingent upon Purchaser obtaining a written commitment or commitments, as the case may be, for the third party financing required in Paragraph 3, Purchaser agrees to make written application for such financing within 7 business days of the date of acceptance of this Contract by the Seller and to diligently pursue obtaining a commitment therefor. Purchaser may obtain alternative financing for which Purchaser is qualified provided there is no additional expense to Seller and the Settlement Date is not delayed. Seller may elect, in the exercise of Seller's sole discretion, to provide the specified financing to Purchaser.

If Purchaser does not obtain such a written commitment and so notifies Seller in writing before the expiration of the above-stated deadline, then this Contract shall terminate upon the giving of such notice and the Deposit shall be refunded to Purchaser. If Purchaser does not obtain a written commitment and if such a notice is not received by the deadline, or such later



deadline as the parties may agree upon in writing, then Seller shall have the right to (i) deem the financing contingency provided herein satisfied, or (ii) terminate this Contract by giving Purchaser written notice of such termination within 5 days after the deadline. Failure of Purchaser to make such application or to diligently pursue obtaining such financing shall be a default hereunder, and this Contract shall be null and void and the Deposit shall be forfeited to Seller.

6. **Loan Fees.** If a lender making a loan described in Paragraph 3 requires that a loan discount fee be paid by Seller, commonly known as "points" (a "point" being 1% of the principal amount of the loan), as a condition of making the loan, Seller agrees to pay the first trust lender up to _____ points and to pay the second trust lender up to _____ points. Except as otherwise agreed, Purchaser shall pay all other points, loan origination fees, charges and all other costs imposed by a lender or otherwise incurred in connection with obtaining and closing the loan or loans.

7. **Settlement Agent and Possession.** Settlement shall be made at the offices of Title Alliance ("Settlement Agent") on April 8, 2013 ("Settlement Date"). The Settlement Date may only be changed with the written consent of the Buyer and the Seller. Possession shall be given at Settlement, unless otherwise agreed in writing by the parties.

8. **Required Disclosures.**

(a) **Property Owners' Association Disclosure.** Seller represents that the Property (check as applicable) ___ is X is not located within a development that is subject to the Virginia Property Owners' Association Act ("Act") (Virginia Code § 55-508 through § 55-516). If the Property is within such a development, the Act requires Seller to obtain an association disclosure packet from the property owners' association and provide it to Purchaser.

The information contained in the association disclosure packet shall be current as of a specified date which shall be within 30 days of the date of acceptance of the Contract by the Seller. Purchaser may cancel this Contract: (i) within 3 days after the date of the Contract, if on or before the date that Purchaser signs the Contract, Purchaser receives the association disclosure packet or is notified that the association disclosure packet will not be available; (ii) within 3 days after hand-delivered receipt of the association disclosure packet or notice that the association disclosure packet will not be available; or (iii) within 6 days after the post-marked date, if the association disclosure packet or notice that the association disclosure packet will not be available is sent to Purchaser via the United States mail. Purchaser may also cancel the Contract, without penalty, at any time prior to Settlement if Purchaser has not been notified that the association disclosure packet will not be available and the association disclosure packet is not delivered to Purchaser. Purchaser's notice of cancellation shall be either hand-delivered or sent via United States mail, return receipt requested, to Seller. Purchaser's cancellation pursuant to this subsection shall be without penalty. This Contract shall become void upon cancellation and the Deposit shall be refunded in full to Purchaser upon Purchaser's notice of cancellation.

If more than 6 months have elapsed between the date of ratification of this Contract and the Settlement Date, Purchaser may submit a copy of the Contract to the property owners' association along with a request for assurance that the information required by Virginia Code §



55-512 previously furnished to Purchaser in the association disclosure packet remains materially unchanged; or, if there have been material changes, a statement specifying such changes. Purchaser shall be provided with such assurances or such statement within 10 days of the receipt of such request by the property owner's association. Purchaser may be required to pay a fee for the preparation and issuance of the requested assurances. Said fee shall reflect the actual costs incurred by the property owners' association in providing such assurances but shall not exceed $100.00 or such higher amount as may now or hereafter be permitted pursuant to applicable statutes.

Any rights of Purchaser to cancel the Contract provided by the Act are waived conclusively if not exercised prior to Settlement.

(b) **Residential Property Disclosure/Disclaimer.** The Virginia Residential Property Disclosure Act (Virginia Code § 55-517 through § 55-525) requires Seller of certain residential property to provide Purchaser in a form provided by the Real Estate Board with either (i) a property disclaimer statement that states Seller makes no representations or warranties as to the condition of the Property or any improvements thereon, and that Purchaser will be receiving the Property "as is," that is, with all defects that may exist (if any) except as otherwise provided in this Contract, or (ii) a property disclosure statement disclosing defects and the condition of the Property based on Seller's actual knowledge. If Seller furnishes a disclosure statement, then Seller is required at Settlement to disclose any material change in the physical condition of the Property, or to certify to Purchaser that the condition of the Property is substantially the same. If the disclaimer or disclosure statement required by the Virginia Residential Property Disclosure Act is delivered to Purchaser after Contract ratification, Purchaser may terminate this Contract by giving written notice to Seller either by hand-delivery or by United States mail, postage prepaid, at or prior to the earliest of (i) 3 days after delivery of the disclosure or disclaimer in person, or (ii) 5 days after the post-mark if the disclosure or disclaimer is posted in the United States mail, postage prepaid, and properly addressed to Purchaser, or (iii) Settlement upon the purchase of the Property, or (iv) occupancy of the Property by Purchaser, or (v) execution by Purchaser of a written waiver of Purchaser's right of termination under this chapter contained in a writing separate from the Contract, or (vi) Purchaser making written application to a lender for a mortgage loan where such application contains a disclosure that the right of termination shall end upon the application for the mortgage loan.

In order to terminate the Contract pursuant to this subsection, Purchaser must, within the times required by this subsection, give written notice to Seller either by hand-delivery or by United States mail, postage prepaid, and properly addressed to Seller. If Purchaser terminates the Contract in compliance with this subsection, termination shall be without penalty to Purchaser, and Purchaser's Deposit shall be promptly returned. Any rights of Purchaser to terminate the Contract provided by this subsection shall end if not exercised prior to the earlier of either the making of a written application to a lender for a mortgage loan where the application contains a disclosure that the right of termination shall end on the application for the mortgage loan, or Settlement or occupancy by Purchaser, in the event of a sale, or occupancy, in the event of a lease with option to purchase.

Check A or B.



    A. \_\_\_\_ Seller has furnished Purchaser with a Residential Property **Disclaimer** Statement.

    B. \_\_\_\_ Seller has furnished Purchaser with a Residential Property **Disclosure** Statement.

(c) **Virginia Condominium Act.** Pursuant to Virginia Code § 55-79.97, Seller represents that the Property \_\_\_\_ is or _x_ is not a condominium unit. If the Property is a condominium unit, this Contract is subject to the Virginia Condominium Act that requires Seller to furnish Purchaser with certain financial and other disclosures prior to entering into a binding contract. If the required disclosures are unavailable on the date of ratification, Seller shall promptly request them from the unit condominium owners' association and provide them to Purchaser who shall acknowledge receipt in writing upon delivery. If Purchaser fails to receive the disclosures within 15 days after the date of ratification of this Contract or the disclosures are found unacceptable to Purchaser, Purchaser may void this Contract by delivering notice to the Broker within 3 days after the disclosures are received or due (if not received) and Purchaser's Deposit shall be returned promptly.

If more than 60 days have lapsed between the date of ratification of this Contract and the Settlement Date, Purchaser may submit a copy of the Contract to the unit owners' condominium association with a request for assurance from the unit owners' condominium association that there have been no material changes from the previously furnished information from the unit owners' condominium association.

Purchaser may declare this Contract void within 3 days after either receipt of the required disclosures or of notice that there are material changes, or the failure of the condominium unit owners' association to provide assurances (within 10 days after receipt of Purchaser's request) that there have been no material changes.

(d) **Mechanics' and Materialmen's Liens.**

NOTICE

Virginia law (Virginia Code § 43-1 *et seq.*) permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against the Property. This lien may be filed at any time after the work is commenced or the material is furnished, but not later than the earlier of (i) 90 days from the last day of the month in which the lienor last performed work or furnished materials or (ii) 90 days from the time the construction, removal, repair or improvement is terminated. (See Standard Provision J on Exhibit A.)

AN EFFECTIVE LIEN FOR WORK PERFORMED PRIOR TO THE SETTLEMENT DATE MAY BE FILED AFTER SETTLEMENT. LEGAL COUNSEL SHOULD BE CONSULTED.

(e) **Adjoining Property.** Seller makes no representations as to matters affecting adjacent parcels, and Purchaser should exercise whatever due diligence that Purchaser deems necessary with respect to adjacent parcels. In addition, Purchaser should exercise whatever due diligence the Purchaser deems necessary with respect to information on any sexual offenders



registered under Chapter 23 (Section 19.2-387 et. seq.) of Title 19.2, whether the Seller proceeds under subdivision 1 or 2 of subsection A of Section 55-519. Such information may be obtained by contacting your local police department of the Department of State Police, Central Criminal Records Exchange at 804-674-2000 or www.vsp.state.va.us/vsp.html.

(f) **Title Insurance Notification.** Purchaser may wish at Purchaser's expense to purchase owner's title insurance. Depending on the particular circumstances of the transaction, such insurance could include affirmative coverage against possible mechanics' and materialmen's liens for labor and materials performed prior to Settlement and which, though not recorded at the time of recordation of Purchaser's deed, could be subsequently recorded and would adversely affect Purchaser's title to the Property. The coverage afforded by such title insurance would be governed by the terms and conditions thereof, and the premium for obtaining such title insurance coverage will be determined by its coverage.

(g) **Lead-Based Paint Disclosure.** The certification, required pursuant to the Lead-Based Paint Hazard Reduction Act of 1992, signed by Seller and Purchaser is ____ is not ____ attached hereto. All improvements on the Property were ____ were not ____ constructed after January 1, 1978.

(h) **Seller's and Purchaser's Options.** In the event that the total cost of fulfilling Seller's obligations set forth in Paragraphs C, F, G, H and I in Standard Provisions exceeds $_____. Seller shall have the option to (i) pay the total cost, or (ii) pay $_____ to Purchaser and to refuse to pay any excess over that amount. If Seller elects (ii) Purchaser shall have the option to (____) accept the Property in its present condition, in which case Seller shall pay $_____ to Purchaser at Settlement or (____) terminate this Contract and recover the Deposit. If no amounts are entered in the above space in this paragraph, the parties agree that the amount of each shall be One Thousand and 00/100 Dollars ($1,000.00).

(i) **Notice of Principal Residence.** Purchaser does _x_ does not ____ intend to occupy the Property as Purchaser's principal residence.

(j) **Choice of Settlement Agent:** You have the right to select a settlement agent to handle the closing of this transaction. The settlement agent's role in closing your transaction involves the coordination of numerous administrative and clerical functions relating to the collection of documents and the collection and disbursement of funds required to carry out the terms of the contract between the parties. If part of the purchase price is financed, your lender will instruct the settlement agent as to the signing and recording of loan documents and the disbursement of loan proceeds. No settlement agent can provide legal advice to any party to the transaction except a settlement agent who is engaged in the private practice of law in Virginia and who has been retained or engaged by a party to the transaction for the purpose of providing legal services to that party.

Escrow, closing and settlement service guidelines: The Virginia State Bar issues guidelines to help settlement agents avoid and prevent the unauthorized practice of law in connection with furnishing escrow, settlement or closing services. As a party to a

real estate transaction, you are entitled to receive a copy of these guidelines from your settlement agent, upon request, in accordance with the provisions of the Consumer Real Estate Settlement Protection Act.

9. **Standard Provisions on the Reverse Side or Attached Pages.** All of the Standard Provisions in Exhibit A are incorporated herein by reference, and shall apply to this Contract, except the following lettered Standard Provisions are hereby deleted: (If none are deleted, state "None" in this blank.) _____

10. **Other Terms.** The property is to be sold "AS IS". The seller will make no repairs or improvements to the property. *Purchaser is to pay all of Sellers Closing Cost & Expense*

11. **Acceptance.** This Contract when signed by Purchaser shall be deemed an offer and shall remain in effect, unless withdrawn, until 5:00 PM (time) March 24, 2013. If not accepted within that time by Seller by delivery of a signed copy of this Contract to Purchaser or Purchaser's designated representative, it shall become null and void.

Seller accepts this Contract at  12:30  (time),  3/29 , 2013.

_____ 3/29/13
Purchaser, 4 Johns Investments, LLC    Date
(Heather Johns, President)

_____ 3/29/13
Seller, Estate of Dennis Obey    Date

EXHIBIT A

## STANDARD PROVISIONS

A. **Deposit.** In the event this Contract is terminated as provided herein, or in the event of a breach of this Contract by Seller, the Deposit shall be returned to Purchaser, but such return shall not affect any other remedies available to Purchaser for Seller's breach. In the event Purchaser breaches this Contract, the Deposit shall be paid to Seller, but such payment shall not preclude any other remedies available to Seller for such breach.

B. **Expenses and Prorations.** Seller agrees to pay the costs of preparing the deed, certificates for non-foreign status and state residency and the applicable IRS Form 1099, the recordation tax applicable to grantors, and the Seller's attorney fee or Settlement Agent's fee. Except as otherwise agreed herein, all other expenses incurred by Purchaser in connection with the Contract and the transaction set forth therein, including, without limitation, title examination costs, insurance premiums, survey costs, recording costs, loan document preparation costs and fees of Purchaser's attorney, shall be borne by Purchaser. All taxes, assessments, interest, rent and mortgage insurance, if any, shall be prorated as of Settlement. In addition to the Purchase Price, Purchaser shall pay Seller (i) for all fuel oil remaining on the Property (if any) at the prevailing market price as of Settlement and (ii) any escrow Deposits made by Seller which are credited to Purchaser by the holders thereof.

C. **Title.** At Settlement, Seller shall convey to Purchaser good and marketable fee simple title to the Property by deed of general warranty containing English covenants of title, free of all liens, tenancies, defects and encumbrances, except as otherwise indicated herein, and subject only to such restrictions and easements as shall then be of record which do not affect the use of the Property for residential purposes or render the title unmarketable. If a defect is found which can be remedied by legal action within a reasonable time, Seller shall, at Seller's expense, promptly take such action as is necessary to cure the defect. If Seller, acting in good faith, is unable to have such defect corrected within 60 days after notice of such defect is given to Seller, then this Contract may be terminated by either Seller or Purchaser. Purchaser may extend the date for Settlement to the extent necessary for Seller to comply with this Paragraph but not longer than 60 days.

D. **Land Use Assessment.** In the event the Property is taxed under land use assessment and this sale results in disqualification from land use eligibility, Seller shall pay, when assessed, whether at or after Settlement, any rollback taxes assessed. If the Property continues to be eligible for land use assessment, Purchaser agrees to make application, at Purchaser's expense, for continuation under land use, and to pay any rollback taxes resulting from failure to file or to qualify.

E. **Risk of Loss.** All risk of loss or damage to the Property by fire, windstorm, casualty or other cause, or taking by eminent domain, is assumed by Seller until Settlement. In the event of substantial loss or damage to the Property before Settlement, Purchaser shall have the option of either (i) terminating this Contract, or (ii) affirming this Contract, with appropriate arrangements



being made by Seller to repair the damage, in a manner acceptable to Purchaser, or Seller shall assign to Purchaser all of Seller's rights under any applicable policy or policies of insurance and any condemnation awards and shall pay over to Purchaser any sums received as a result of such loss or damage.

F.  **Equipment Condition.**  Purchaser agrees to accept the Property at Settlement in its present physical condition, except as otherwise provided herein. Seller warrants, even if a property Disclaimer Statement has been provided to Purchaser (see paragraph 9(b)), that the heating and cooling equipment, plumbing systems (including well and septic systems), and electric systems will be in working order, and the roof and basement will be free of leaks, at Settlement or at Purchaser's occupancy, whichever occurs first. Seller agrees to deliver the Property in broom-clean condition with all trash and debris removed and to exercise reasonable and ordinary care in the maintenance and upkeep of the Property between the date this Contract is accepted and the Settlement Date or upon Purchaser's occupancy, whichever occurs first. Purchaser and his representatives shall have the right to make an inspection immediately before Settlement or occupancy.

G.  **Affidavits and Certificates.**  Seller shall deliver to Purchaser an affidavit on a form acceptable to Purchaser's lender, if applicable, signed by Seller, that no labor or materials have been furnished to the Property within the statutory period for the filing of mechanics' or materialmen's liens against the Property, or, if labor or materials have been furnished during the statutory period, that the costs thereof have been paid. Seller shall also deliver to Purchaser applicable non-foreign status and state residency certificates and applicable 1099 IRS certificates.

H.  **Assignability.**  This Contract may not be assigned by either Seller or Purchaser without the written consent of the other.

I.  **Miscellaneous.**  The parties to this Contract agree that it shall be binding upon them, and their respective personal representatives, successors and assigns, and that its provisions shall not survive Settlement and shall be merged into the deed delivered at Settlement except for the provisions relating to rollback taxes in Paragraph D. This Contract contains the final agreement between the parties hereto, and they shall not be bound by any terms, conditions, oral statements, warranties or representations not herein contained. This Contract shall be construed under the laws of the Commonwealth of Virginia.

END OF STANDARD PROVISIONS



